IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, <br><br> Defendant. | Case No. 1:22-cv-2671 |

## JOINT STATUS REPORT

In this Freedom of Information Act (FOIA) case against the National Archives and Records Administration (NARA), the plaintiffs seek records "related to NARA's interactions with former President Donald J. Trump, the White House, the Department of Justice, and others concerning the application of the Presidential Records Act and related issues to President Trump." Am. Compl. ¶ 1 (ECF No. 3). The plaintiffs' FOIA request is one of many that NARA has received related to the retrieval of records from former President Trump. To respond most efficiently to these overlapping requests, NARA has identified and begun processing commonly requested categories of records. When NARA completes processing a category, it simultaneously issues an interim response to all requesters and posts any non-exempt or discretionary releases to a landing page within NARA's online reading room available at https://www.archives.gov/foia/15boxes.

On October 3, 2022, NARA made its first interim response. That response processed 309 pages of emails between NARA officials and representatives of former President Trump and 1321 pages of emails between NARA and external entities. Many pages were withheld in full, subject to FOIA exemptions (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E). *See* 5 U.S.C. § 552.

However—and without conceding that the materials are nonexempt—NARA made the discretionary decision to release sixty-five pages of records and post them to the online reading room. (Several of the released records include information redacted under exemption (b)(6).)

NARA plans to make a second interim response in November, followed by a third interim response in December, which collectively will process over 3000 additional pages of records. At that point, NARA will commence processing any outstanding records responsive to the plaintiffs' request.

The plaintiffs do not object to this planned production schedule at this time. However, the parties disagree as to whether the Court should hold a status conference in this matter.

**Plaintiffs' Position.**   Plaintiffs believe that the first production they have received raises several discrete and important legal questions regarding the applications of exemptions which they expect will also arise in the November and December productions.   These legal issues present as pure questions of law and do not turn on parsing individual records.  For example, NARA has asserted that the consultant corollary doctrine applies to communications between NARA and President Trump pursuant to *Pub. Citizen v. DOJ*, 111, F.3d 168 (D.C. Cir. 1997).   Setting aside the validity of *Pub. Citizen* in light of FOIA's text and the Court's decision in *Dep't of the Interior v. Klamath*, 532 U.S. 1 (2001), Plaintiffs believe that under *Klamath*, *Pub. Citizen*, and other current D.C. Cir. Precedent, the consultant corollarial doctrine cannot apply as a matter of law to NARA's communications with President Trump after the date NARA made a criminal referral concerning President Trump because at that point the parties were completely adverse.   To take another example, NARA has also asserted the consultant corollary doctrine as to communications between NARA and Congress citing *Ryan v. DOJ*, 617 F.2d 781 (D.C. Cir. 1980).   Again, setting aside Plaintiffs' intent to present *Ryan* for *en ban*c and *certiorari* review if necessary, the

consultant corollary doctrine cannot apply under existing precedent as a matter of law to communications between NARA and Congress that sound in congressional oversight. By definition the parties there are adverse; hence the Department's Office of Legal Counsel routinely advising the President to assert the deliberative process privilege *against Congress*. To take an example outside of (b)(5), NARA asserts that Exemptions under (b)(7) can apply to Congress's activities. But the Supreme Court has repeatedly been clear that, Congress cannot act "for the purpose of 'law enforcement,' because 'those powers are assigned under our Constitution to the Executive and the Judiciary.'" *Trump v. Mazars*, 140 S.Ct. 2019, 2032 (2020) (internal citation omitted). Thus, Plaintiffs submit b(7) cannot apply to Congress's actions as a matter of law.

To be sure, these types of issues would be ordinarily resolved on summary judgement briefing after a *Vaughn Index* has been prepared. But Plaintiffs believe they should be resolved now for two separate reasons: (1) efficiency; and (2) the importance of the requested records. As to efficiency, the vast majority of records processed in the first production were withheld. NARA has given no indication that this trend will not continue. Given the number of documents withheld, Plaintiffs submit this is type of case where it would be more efficient to determine discrete legal questions concerning asserted exemptions now while first order processing is on-going rather then having NARA log all the records and then if Plaintiffs prevail (as they fully expect to) have to re-log the records under a different legal standard. This efficiency point leads into Plaintiffs' exigency-based argument. NARA has conceded these requests concern a matter of exceptional importance. In such as case the normal FOIA process necessarily is highly accelerated because the records are of great import and most relevant now rather than later. By dual tracking the current production and resolution of important discrete legal questions Plaintiffs

believe the case can be resolved more quickly by virtue of both dual tracking and avoiding a situation where NARA must re-log records if Plaintiffs prevail on these questions of law.

In light of the great importance of the case justifying a highly accelerated process Plaintiffs request a status conference to discuss with the court the best way forward to resolve these matters. Plaintiffs believe such a conference would be particularly helpful here given NARA's position that they will not diverge from what they see as "standard" procedure.[1]

Accordingly, the plaintiffs respectfully request that the Court schedule a status conference at the Court's earliest convenience to discuss the most efficient way to proceed.

**NARA's Position.** NARA opposes the plaintiffs' request, because NARA believes a status conference is unnecessary. NARA's position is that this case should proceed in the ordinary course for FOIA litigation in this District: After production is completed, the parties will meet and confer about what—if anything—the plaintiffs challenge about NARA's response. Following that meet-and-confer, NARA would move for summary judgment on any disputed issues, submitting a *Vaughn* index or a supporting declaration to justify any challenged withholdings. It would be premature and inefficient (not to mention highly irregular) for the Court to address legal questions in piecemeal and in the abstract, divorced from the actual record. Simply put, that is not the way that withholdings are litigated in a FOIA case. Indeed, from NARA's perspective, it is too early to tell whether all of these questions will even be presented, let alone whether any will turn out to be dispositive.

\* \* \*

---

[1] If the Court believes it would be helpful, Plaintiffs are happy to submit a letter brief identifying all the discrete questions of law raised by NARA's withholding.

In the event the Court does not schedule a status conference, the parties jointly request that they be permitted to file another joint status report on Friday, January 20, 2023 updating the Court on the status of this case.

Dated:  October 27, 2022                    Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:   (703) 261-4194
Email:   samueledewey@sedchambers.com

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone:   (202) 489-2969
Email:   Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Kevin Wynosky*
KEVIN WYNOSKY (PA Bar # 326087)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W., Rm. 12400
Washington, DC 20005
(202) 616-8267
Kevin.J.Wynosky@usdoj.gov

*Counsel for Defendant*